NOT DESIGNATED FOR PUBLICATION

No. 125,919

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

V.

NICHOLAS OWENS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument. Opinion filed March 8, 2024. Vacated in part, dismissed in part, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM:  After Nicholas Owens pleaded guilty to one count of attempted aggravated indecent liberties with a child, the district court ordered that he reimburse the State Board of Indigents' Defense Services (BIDS) for attorney fees in the sum of $975 and ordered Owens to register under the Kansas Offender Registration Act (KORA). Owens challenges the attorney fee assessment, claiming the district court failed to properly consider Owen's financial resources and the burden the BIDS fee would impose on Owens. Because we agree that the district court erred when imposing the BIDS fees, we vacate the assessment and remand to the district court for further proceedings. Owen's also brings two constitutional challenges to the KORA registration. Because neither

1

argument was raised before the district court or preserved for appeal, we decline to consider those challenges.

FACTUAL AND PROCEDURAL HISTORY

Owens pleaded guilty to attempted aggravated indecent liberties with a child, in violation of K.S.A. 2021 Supp. 21-5301(a), (c)(1) and K.S.A. 2021 Supp. 21-5506(b)(1), (c)(2)(A). Because Owen's had applied for and received court appointed counsel at the outset of the case, the district court noted that the BIDS guidelines suggested attorney fees of $975 be assessed. Owens requested the district court waive the BIDS fee, arguing that (1) he would make less than minimum wage in prison; (2) his indigence qualified him for a public defender; (3) the case was straightforward and did not require "an outpouring of resources" on counsel's part; and (4) his meager resources would be heavily consumed during incarceration. Defense counsel concluded by saying, "I ask that you make *State v. Robinson* findings and waive any further costs beyond the $100 application fee."

The district court responded:

"THE COURT: Mr. Owens, there are opportunities for employment in the Department of Corrections. I believe you've been in the Department of Corrections in the past. Are you physically able to work?
"DEFENDANT: Yes, sir.
"THE COURT: All right. Then I'll impose the $975 in attorney fees along with the $100 administrative fee."

The district court then notified Owens, without objection, of his obligation to register under KORA, sentenced Owens to the highest presumptive sentence of 55 months in prison, and ordered him to pay a $400 child advocacy center (CAC) fee.

2

As the sentencing hearing concluded, in response to the district court's query whether there was anything further to put on the record, defense counsel, "in light of the newly imposed $400 CAC fee," again asked for *Robinson* findings and for waiver of the attorney fees. The district court responded:

>    ". . . All right. Well, the attorney fees that are applied here I believe are appropriate, and the representation that Mr. Owens received and the resolution in this case were pretty significant. A non-tried Level 1 case has recommended attorney fees of $2300. I'm not even sure that's the amount that applies here, but I believe that Mr. Owens is capable of working and paying those attorney fees.
>    "In light of the resolution he received, he should pay them, and he does have an additional five months in KDOC to work and pay for those attorney fees, so I will leave the attorney fees as ordered."

Owens timely appeals.

ANALYSIS

I.  *Did the district court err when imposing the BIDS fee?*

Owens argues that the district court failed to explicitly consider his financial resources and the burden such payment would impose, as required by K.S.A. 22-4513(b). See *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006). Resolving Owens' appeal requires interpretation of K.S.A. 22-4513, which presents a question of law subject to unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

K.S.A. 22-4513(b) states the following:  "In determining the amount and method of payment of [the BIDS fee], the court shall take account of financial resources of the defendant and the nature of the burden that payment of such sum will impose." In *Robinson*, our Supreme Court held that the plain language of the statute requires that

3

"the sentencing court, at the time of initial assessment, must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision. Without an adequate record on these points, meaningful appellate review of whether the court abused its discretion in setting the amount and method of payment of the fees would be impossible." 281 Kan. at 546.

There are numerous opinions from our court applying the BIDS reimbursement statute and the *Robinson* case. We consider the limited inquiry by the district court here to be most similar to cases in which our court has found the analysis lacking and remanded the cases. For example, in *State v. Mans*, No. 125,252, 2023 WL 3406550, at*2 (Kan. App. 2023) (unpublished opinion), the district court established that Robert Bruce Mans Jr. had training as a sheet metal machinist. This court vacated the BIDS attorney fee and remanded because the district did not ask about the actual income Mans might earn or explicitly consider the nature of the burden imposed, further noting that Mans would serve more than 22 years in prison before engaging in his sheet metal trade. 2023 WL 3406550, at *4. In *State v. Adams*, No. 124,500, 2022 WL 3132160, at *3 (Kan. App. 2022) (unpublished opinion), *rev. denied* 317 Kan. 846 (2023), this court vacated the BIDS attorney fee and remanded because the district court established only that Edward Thomas Adams would "'have some opportunity for income'" while serving his sentence but failed to consider when he would start working or how much he would make. In *State v. Wright*, No. 123,305, 2022 WL 1280717, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 763 (2022), the district court asked John Wright if he could work, and he replied, "'Yeah I have a list that would hire me right now.'" This court vacated the BIDS attorney fee and remanded because Wright's employment prospects were largely speculative in view of his prison sentence of over two years. 2022 WL 1280717, at *2. "The mere fact Wright might at some point be able to obtain employment was insufficient for the district court to make a proper determination about his ability to pay because there was no evidence or information presented about his income and expenses." 2022 WL 1280717, at *2. And in *State v. Harrison*, No. 122,750, 2021 WL 4032857, at

4

*2 (Kan. App. 2021) (unpublished opinion), *rev. denied* 316 Kan. 760 (2022), the district court found only that Harrison could get a job and contended that it had fulfilled its duty under *Robinson*. This court vacated the BIDS attorney fee and remanded, holding that such conclusory analysis does not comport with the K.S.A. 22-4513(b) findings requirement. 2021 WL 4032857, at *2.

The State argues that the district court's inquiry into Owens' financial resources and the nature of the burden of the BIDS attorney fee was "brief but appears to be sufficient." We do not agree.

The district court failed to undertake even a cursory, let alone explicit, analysis of Owens' financial resources or nature of the burden imposed by the BIDS fee. It failed to directly respond to or analyze any of the arguments made by Owens in support of his request for waiver. And the district court was specifically asked twice to provide its analysis under *Robinson* and did not do so. Instead, the district court repeatedly referenced the results obtained by appointed counsel as justification for the BIDS fee assessment. The district court's explicit analysis of the BIDS fees was "[i]n light of the resolution he received, he should pay them." The "results obtained" by appointed counsel is not a basis for the assessment of fees under either K.S.A. 22-4513(b) or *Robinson*.

Our Supreme Court's holding in *Robinson* requires district courts to analyze a defendant's financial resources and the nature of the burden that payment will impose explicitly. 281 Kan. at 546. That inquiry does not need to be an exhaustive audit of all the defendant's past and future finances. See *State v. Buck-Schrag*, 312 Kan. 540, 555, 477 P.3d 1013 (2020). But evidence of a defendant's employability is not enough to satisfy the district court's obligations under *Robinson*. *State v. Wade*, 295 Kan. 916, 927, 287 P.3d 237 (2012). As in *Wade*, the district court here found only that Owens was physically employable. It did not ascertain his financial resources or the burden such reimbursement would cause him. Because the district court's inquiry falls well short of

5

the K.S.A. 22-4513(b) requirements as explained in *Robinson*, we vacate the BIDS attorney fee and remand for further proceedings.

II. *We decline to address Owens' claims that KORA violates the United States Constitution.*

Owens argues that the obligation to register as a sex offender under KORA violates his First Amendment right to be free from compulsion to speak at the government's behest. Because Owens raises this issue for the first time on appeal, we decline to address his constitutional claim. Generally, constitutional issues not raised before the district court cannot be raised on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Appellate courts may address a constitutional issue for the first time on appeal in three circumstances:

> "'[T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.'" *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020).

But "[t]he decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, we have no obligation to do so. [Citations omitted.]" *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). For the reasons set forth below, even if we agreed one of the exceptions might apply here, we decline to address Owens' new KORA claims on appeal.

6

Laws that compel speech are constitutional only if they can survive strict scrutiny. See *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 642, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994). Strict scrutiny would require the State to show that a compelling government interest justifies restricting Owens' First Amendment rights, and that the restriction is narrowly tailored to achieve that interest. See *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 680, 440 P.3d 461 (2019). But, as the *Pearson* court said, questions of government interest and of narrow tailoring necessarily involve fact-finding. *State v. Pearson*, No. 125,033, 2023 WL 2194306, at *1 (Kan. App.) (unpublished opinion), *petition for rev. filed* March 20, 2023. Those considerations require the development of facts outside our appellate record. *State v. Spilman*, 63 Kan. App. 2d 550, 575, 534 P.3d 583, *rev. denied* 317 Kan. 849 (2023).

Several appellants have raised similar First Amendment challenges to KORA, and our court has repeatedly declined to review the issue for the first time on appeal. See, e.g., *Spilman*, 63 Kan. App. 2d at 577; *Pearson*, 2023 WL 2194306, at *2; *State v. Masterson*, No. 124,257, 2022 WL 3692859, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 762 (2022).

In *Pearson*, this court explained why it was refraining from addressing the issue for the first time on appeal, and we agree with the panel's perspective:

> "Identifying the compelling governmental interests KORA . . . involves examining a host of issues best explored first at the district court level. Analyzing the proportionality of KORA requires an in-depth balancing of its benefits and costs, along with exploring potential alternatives to achieving those benefits and the accompanying costs and anticipated effectiveness of those alternatives. It may even involve evaluating KORA's effectiveness in protecting the compelling governmental interests it is meant to serve, which could involve the presentation of evidence and fact-finding. And '[f]act-finding is simply not the role of the appellate courts.' [Citations omitted.]" 2023 WL 2194306, at *1.

7

In addition to declining to review the compelled speech claim, some of the decisions rendered by this court have also noted that it has weak legal support. For example, *Masterson* declined to consider the issue but noted "*if we were to address this issue*, it is legally and fatally flawed." (Emphasis added.) 2022 WL 3692859, at *2. The *Masterson* court noted that the most persuasive legal authority came from federal courts which upheld the Sex Offender Registration and Notification Act (SORNA), the federal equivalent to KORA. 2022 WL 3692859, at *2; see *United States v. Fox*, 286 F. Supp. 3d 1219, 1221-24 (D. Kan. 2018). And KORA itself survived a compelled speech challenge in federal court. *Davis v. Thompson*, No. 19-3051-SAC, 2019 WL 6327420, at *3 (D. Kan. 2019) (unpublished opinion).

Owens notes that *Masterson* is not binding and argues that this court should not be persuaded by its reasoning. Owens argues that the federal cases cited in *Masterson* are weak authority because they do not sufficiently analyze offender registries in general and KORA especially. But *Masterson* only illustrates the point expressed in *Spilman* and *Pearson* that fact-finding is necessary for proper consideration of the issues. The *Masterson* court acknowledged that, thus far, persuasive authority weighs against holding that KORA is compelled speech and, even further, unconstitutional compelled speech. See *State v. Jones*, No. 124,174, 2023 WL 119911, at *5-6 (Kan. App.) (unpublished opinion) (holding that Jones asserted "no novel arguments" to urge a different outcome from *Masterson*), *rev. granted* 317 Kan. 848 (2023). In other words, the legal arguments so far, whether considered weak or strong, are against Owens' position that KORA is unconstitutional compelled speech. Raising the issue in the district court would allow for the kind of fact-finding described in *Spilman*, 63 Kan. App. 2d at 575. Because Owens raises the issue for the first time on appeal, this important step of preserving and fully litigating the argument has not been done. As a result, we think it prudent to decline to address Owens' new constitutional claim.

Owens also argues—for the first time on appeal—that KORA violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by creating an exit mechanism for some offenders which is not available to other offenders.

As with Owens' compelled speech argument, his equal protection argument requires additional fact development. Appellate courts apply a lower standard—the rational basis test—to equal protection challenges to a criminal statute. *Spilman*, 63 Kan. App. 2d at 576. To apply the rational basis test, this court would need to determine whether similarly situated offenders are treated differently and whether the classifications used to do so bear a rational relationship to a legitimate government objective. *Crawford v. Kansas Dept. of Revenue*, 46 Kan. App. 2d 464, 471, 263 P.3d 828 (2011), *rev. denied* 294 Kan. 943 (2012). As the party challenging the classifications, Owens would bear the burden of disputing every reasonable basis to support the classifications. The record does not provide enough information about these classifications or the governmental objectives to fully and appropriately analyze the issue.

Thus, we deem it imprudent to address either of Owens' constitutional challenges to KORA.

Vacated in part, dismissed in part, and remanded with directions.